**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**VIKRANT V. ANAND,**

                  **Plaintiff,**

              v.                                5:05-CV-469
                                                        (FJS/GJD)
**UNITED STATES NATIONAL SECURITY AGENCY;**
**UNITED STATES DEPARTMENT OF DEFENSE;**
**UNITED STATES DEPARTMENT OF TREASURY,**
**Financial Management Service; and UNITED STATES**
**DEPARTMENT OF JUSTICE,**

                  **Defendants.**
_____

**APPEARANCES**                             **OF COUNSEL**

**OFFICE OF MICHAEL A.**            **MICHAEL A. ROSENHOUSE, ESQ.**
**ROSENHOUSE, ESQ.**
16 West Main Street
Suite 739
Rochester, New York 14614
Attorneys for Plaintiff

**OFFICE OF THE UNITED**            **WILLIAM F. LARKIN, AUSA**
**STATES ATTORNEY**
100 South Clinton Street
Syracuse, New York 13261-7198
Attorneys for Defendants

**SCULLIN, Senior Judge**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

     Plaintiff filed his complaint in this action on April 15, 2005, seeking a declaratory

judgment and injunction to "prohibit agencies of the federal government from carrying out the

threats of [D]efendants U.S. National Security Agency ("NSA") and U.S. Department of Defense ("DOD") to 'collect' a legally unenforceable claim." *See* Complaint at ¶ 1. Plaintiff asserts that Defendants' attempt to collect debts is legally unenforceable due to the six-year time bar of 28 U.S.C. § 2415 for court action and the ten-year time bar of 31 U.S.C. § 3716(e) for administrative offset.

Currently before the Court are Defendant Department of Justice's ("DOJ") and Defendant Department of Treasury's ("Treasury") motions to dismiss.

## II. BACKGROUND[1]

In January 1990, Plaintiff, who was a high school student at the time, agreed to enter Defendant NSA's Undergraduate Training Program upon his matriculation at the Massachusetts Institute of Technology as an electrical engineering major. Pursuant to a written agreement, the federal government paid certain educational expenses for Plaintiff. In return, Plaintiff agreed to a period of employment with Defendant NSA. The agreement required Plaintiff to reimburse the federal government if he either resigned from the Undergraduate Training Program before completing his educational requirements or voluntarily resigned from his employment with NSA prior to completing his period of service.

On January 24, 1994, Plaintiff resigned from the Undergraduate Training Program prior to completing his educational requirements. Immediately following his resignation, Defendant DOD's Finance and Accounting Office ("Office") sent Plaintiff eighteen invoices on March 28,

---

[1] The facts are undisputed.

1994, seeking a total reimbursement of $61,757.96. The Office also contacted Plaintiff on March 5, 1996, setting a repayment deadline of April 5, 1996. Plaintiff contested the debt by letter.

Several years passed before the Office sent Plaintiff another letter on July 14, 2003, demanding repayment within thirty days and advising that, if Plaintiff did not pay, the Office might transfer the debt to Defendant Treasury, which could (1) offset tax refunds and salary; (2) refer the debt to a private collection agency; (3) refer the debt to DOJ for litigation; (4) report the debt to a credit bureau; and (5) report the debt to the IRS as potential income. In a letter dated October 4, 2004, the Office repeated its warnings and requested payment by November 3, 2004; this letter also advised Plaintiff of his right to request reconsideration of the debt within fifteen days and his right to request a hearing or a waiver. Plaintiff did not respond until November 3, 2004, when he denied the existence of any debt and, alternatively, argued the ten-year limitations period of 31 U.S.C. § 3716(d) discharged any indebtedness. In a letter dated December 1, 2004, the Office responded that the debt was valid because Plaintiff was notified before the end of the limitations period, repeated its warnings about offset and collection procedures, and again advised Plaintiff of his right to request a hearing or a waiver. In its final action before Plaintiff filed suit, the Office sent another letter dated April 1, 2005, requesting payment and repeating its warnings about offset and collection procedures.

### III. DISCUSSION

As stated, currently before the Court are Defendants' motions to dismiss. In its motion, Defendant DOJ argues that the Court lacks subject-matter jurisdiction over Plaintiff's claims because the United States has not waived its sovereign immunity and that there is no independent

statutory grant of jurisdiction for Plaintiff's claims.  Defendant Treasury argues in its motion that Plaintiff has failed to state a claim upon which relief may be granted.[2]

### A.     Subject-matter Jurisdiction

"'Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit.'" *Dep't of the Army v. Blue Fox, Inc.*, 525 U.S. 255, 260 (1999) (quotation omitted). "Consequently, a person attempting to sue a federal agency or officer must demonstrate that the claim being asserted is covered by a specific statutory authorization to sue the United States, or that in effect the proceeding is not a suit against the United States." 14 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 3655 (3d ed. 1998). "[A] waiver of sovereign immunity is to be construed strictly and limited to its express terms." *Lunney v. United States*, 319 F.3d 550, 554 (2d Cir. 2003) (citing *Dep't of the Army v. Blue Fox, Inc.*, 525 U.S. 255, 261, 119 S. Ct. 687, 142 L. Ed. 2d 718 (1999)) (other citation omitted).

Plaintiff argues that Section 10(a) of the Administrative Procedure Act ("APA"), 5 U.S.C. § 702, provides subject-matter jurisdiction.  Alternatively, Plaintiff contends that his suit could be characterized as an action against individual officers of the defendant agencies, with the Mandamus and Venue Act, 28 U.S.C. § 1361, providing subject-matter jurisdiction.

---

[2] After reviewing the submissions of Plaintiff and Defendants, the Court *sua sponte* requested that the parties provide further briefing on the issue of subject-matter jurisdiction, which they have done.

**B.      Section 10(a) of the Administrative Procedure Act**

The APA[3] is "not to be interpreted as an implied grant of subject-matter jurisdiction to review agency actions." *See Califano v. Sanders*, 430 U.S. 99, 105 (1977).  However, "it waives the federal government's sovereign immunity in actions brought under the general federal question jurisdictional statute, 28 U.S.C. § 1331." *Lunney*, 319 F.3d at 558 (citing *Califano*, 430 U.S. at 105, 97 S. Ct. 980).

There is a "'basic presumption of judicial review'" of agency action, but review is limited in three ways. *Id.* (quotation omitted).  First, because agency action is not subject to judicial review when "'committed to agency discretion by law,'" the plaintiff must specify some statute or regulation that would limit the agency's discretion. *Id.* (quotation omitted); *see also Reiner v. W. Vill. Assocs.*, 768 F.2d 31, 33 (2d Cir. 1985).  Second, the APA authorizes challenges to final agency actions only. *See Lunney*, 319 F.3d at 554 (citation omitted).  Third, § 10(c) of the APA "requires exhaustion of all intra-agency appeals mandated either by statute or by agency rule . . . ." *Darby v. Cisneros*, 509 U.S. 137, 147 (1993).

---

[3] Section 10(a) of the APA provides, in pertinent part, that

> [a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof.  An action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein denied on the ground that it is against the United States or that the United States is an indispensable party.  The United States may be named as a defendant in any such action, and a judgment or decree may be entered against the United States. . . .

5 U.S.C. § 702.

The Court will address each of these limitations in turn.

### 1. *Limitation on agency discretion*

Plaintiff must specify some statute or regulation that limits agency discretion. *See Lunney*, 319 F.3d at 558; *see also Reiner*, 768 F.2d at 33. If the statute or regulation provides the court "'*no meaningful standard* against which to judge the agency's exercise of discretion,'" there is no jurisdiction. *Lunney*, 319 F.3d at 558 (quotation omitted).

Although Defendants argue that referral of Plaintiff's account to Treasury for offset is discretionary, they cite the mandatory language of the administrative offset statute:

> pursuant to 31 U.S.C. § 3716(c)(6), NSA/DOD's only duty is that it "*shall* notify the Secretary of the Treasury of all . . . [past due, legally enforceable nontax debt that is over 180 days delinquent] . . . for purposes of administrative offset under this subsection."

*See* Reply to Plaintiff's Memorandum on Jurisdiction at 8 (emphasis added).

The mandatory language of 31 U.S.C. § 3716(c)(6) establishes a lack of agency discretion in referring a matter for offset, as does 31 C.F.R. § 901.3 (2006), which states, "creditor agencies are *required* to refer" such past due debts. 31 C.F.R. § 901.3 (emphasis added). Therefore, the Court concludes that Plaintiff has satisfied this requirement for APA jurisdiction.

### 2. *Final agency action*

Finality concerns "'whether the initial decisionmaker has arrived at a definitive position on the issue that inflicts an actual, concrete injury . . . .'" *Darby*, 509 U.S. at 144 (quotation omitted). Actions that are "'preliminary, procedural, or intermediate'" are not final. *Lunney*, 319

F.3d at 554 (quotation omitted).

Two conditions must be met to establish final agency action. First, the action must signify the "'consummation' of the agency's decisionmaking process . . . - it must not be of a merely tentative or interlocutory nature." *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997) (internal citation omitted). Moreover, the beginning of the decisionmaking process does not mark the "consummation." *See Indus. Customers of N.W. Utils. v. Bonneville Power Admin.*, 408 F.3d 638, 646 (9th Cir. 2005). Nor is a court's equitable intervention appropriate where an agency's intention has been announced but has not come to fruition. *See Eccles v. Peoples Bank of Lakewood Vill.*, 333 U.S. 426, 434 (1948) (citations omitted). Second, the action must determine rights or obligations or be one "from which 'legal consequences will flow.'" *Bennett*, 520 U.S. at 178 (quotation omitted). Therefore, "[t]he core question is whether the agency has completed its decisionmaking process, and whether the result of that process is one that will directly affect the parties." *Franklin v. Massachusetts*, 505 U.S. 788, 797 (1992); *see also Top Choice Distribs., Inc. v. United States Postal Serv.*, 138 F.3d 463, 466 (2d Cir. 1998) (quotation omitted).

A court should interpret the finality requirement pragmatically. *See FTC v. Standard Oil Co.*, 449 U.S. 232, 239 (1980). Courts that have interpreted the finality requirement have considered the following factors: (1) whether the agency issued an opinion on a matter entrusted to its expertise; (2) whether the agency issued an opinion expected to have concrete legal significance; (3) whether the action had legal force or other practical effects on daily operations; (4) whether the action was a definitive statement of the agency's position; and (5) whether immediate compliance is expected. *See, e.g., Indus. Customers*, 408 F.3d at 646; *Hindes v.*

*FDIC*, 137 F.3d 148, 162 (3d Cir. 1998) (citing [*Standard Oil*, 449 U.S.] at 241-43, 101 S. Ct. at 494); *Tarbell v. Dep't of Interior*, 307 F. Supp. 2d 409, 427 (N.D.N.Y. 2004). In sum, a final action "must be one that 'impose[s] an obligation, den[ies] a right, or fix[es] some legal relationship as a consummation of the administrative process.'" *Hindes*, 137 F.3d at 162 (quotation omitted).

There has been no final agency action in this case. In fact, Plaintiff and Defendants have done little more than exchange letters regarding the debt. Defendant DOJ sent Plaintiff eighteen invoices stating the amount of the debt and several letters with repayment dates and warnings. The December 1, 2004 letter told Plaintiff that Defendant DOD "will elect to transfer the outstanding debt to the Department of Treasury." *See* Complaint at Exhibit "J." However, regarding administrative offset and collection procedures, Defendants' letters summarize "[a]ctions that [Defendant Treasury] *may* . . . take[]" in the future. *See id.* at Exhibits "G," "H," & "J" (emphasis added).[4]

Furthermore, the correspondence between Defendant DOD and Plaintiff merely informed Plaintiff about possible future consequences regarding his debt and advised him of the availability of an administrative hearing and waiver procedures pursuant to 31 U.S.C. § 3716(a). These communications had no legal force or practical effect on Plaintiff's daily life; rather, they provided Plaintiff with three options: (1) pay the requested money; (2) challenge the debt at a hearing or request a waiver; or (3) risk referral of the matter to Defendant Treasury for further action.

---

[4] There is nothing in the record to indicate that Defendant DOD has referred the debt to Defendant Treasury or that Defendant Treasury has taken other remedial actions.

-8-

In sum, the Court concludes that Defendants' actions to date are interlocutory in nature and do not signify "consummation" of the decisionmaking process with corresponding direct effects on Plaintiff.[5]  *See Bennett*, 520 U.S. at 178.  Accordingly, the Court rejects Plaintiff's argument that this Court has subject-matter jurisdiction over his claims under the APA.

### *3. Exhaustion*

Even if Plaintiff were able to establish that there had been a final agency action, he still would not be able to rely upon the APA as a basis for this Court's subject-matter jurisdiction because he has not exhausted the required intra-agency appeals.

Defendant DOD advised Plaintiff more than once about his right to have an administrative hearing or to request a waiver, pursuant to 37 U.S.C. § 3716(a)(3).  Defendant DOD even sent Plaintiff the required forms and instructions to do so.  *See* Complaint at Exhibits "H" & "J."  Plaintiff, however, did not avail himself of this opportunity.  Accordingly, the Court concludes that, because Plaintiff failed to exhaust intra-agency appeals, he cannot rely upon the APA as a basis for this Court's subject-matter jurisdiction over his claims.

---

[5] The Court notes that Plaintiff will probably not suffer any consequences until Defendant Treasury executes an offset or takes other remedial action.  Even after referral, Defendant Treasury could decide that the costs of collecting this debt exceed the amount of indebtedness and abandon the offset.  *See* 31 U.S.C. § 3716(h)(2).  It is also possible that no offset will occur due to means-tested exemptions, exemptions for federal benefit programs, or exemptions that the creditor agency requests.  *See* 31 U.S.C. § 3716(c)(3).  In sum, it is possible that Plaintiff may never suffer any detriment.

**C.     The Mandamus and Venue Act**

The Mandamus and Venue Act, 28 U.S.C. § 1361, does "not confer jurisdiction where otherwise none exists." *J.C. Penney Co., Inc. v. United States Dep't of Treasury*, 319 F. Supp. 1023, 1030 (S.D.N.Y. 1970) (footnote omitted); *see also T. M. Sys., Inc. v. United States*, 473 F. Supp. 481, 484 (D. Conn. 1979). Rather, mandamus is recognized as a "drastic" remedy saved for "extraordinary situations." *Allied Chem. Corp. v. Daiflon, Inc.*, 449 U.S. 33, 34 (1980) (citations omitted).

Mandamus jurisdiction is "closely related to the merits of whether a writ of mandamus should issue." *Ocuto Blacktop & Paving Co., Inc. v. Perry*, 942 F. Supp. 783, 786 (N.D.N.Y. 1996) (citations omitted). Three elements must exist to support a writ of mandamus: (1) a "'clear and indisputable'" right to the relief sought, *In re Drexel Burnham Lambert Inc.*, 861 F.2d 1307, 1312 (2d Cir. 1988) (quotation and other citations omitted); (2) "a plainly defined and peremptory duty on the part of the defendant to do the act in question; and (3) no other adequate remedy available[,]" *Lovallo v. Froehlke*, 468 F.2d 340, 343 (2d Cir. 1972) (citations omitted). Conversely, mandamus jurisdiction is inappropriate where there is no plainly defined clear nondiscretionary duty, *see Anderson v. Bowen*, 881 F.2d 1, 5 (2d Cir. 1989) (citation omitted), or where there is no compelled duty owed to the plaintiff, *see Leopold v. United States Civil Serv. Comm'n*, 450 F. Supp. 154, 157 (E.D.N.Y. 1978). Finally, the plaintiff must exhaust other modes of relief. *See City of N.Y. v. Heckler*, 742 F.2d 729, 739 (2d Cir. 1984).

Plaintiff fails to establish jurisdiction under the Mandamus and Venue Act. First, Plaintiff cannot establish a clear and indisputable right to the requested relief because no relief at all is appropriate considering that Defendants have taken no final action with direct effects on

Plaintiff. Second, assuming Defendants owe Plaintiff a plainly defined and peremptory duty, Plaintiff's claims still would not qualify for mandamus jurisdiction because Plaintiff has failed to exhaust available avenues of relief, such as the available hearing or waiver procedures. Finally, Plaintiff has alleged no other fact or circumstance to justify granting this extraordinary form of relief.

Accordingly, the Court rejects Plaintiff's argument that he may bring his claims under the Mandamus and Venue Act.

## IV. CONCLUSION

Accordingly, after reviewing the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Defendants' motions to dismiss are **GRANTED** because this Court lacks subject-matter jurisdiction over Plaintiff's claims; and the Court further

**ORDERS** that the Clerk of the Court enter judgment and close this case.

**IT IS SO ORDERED.**

Dated: November 9, 2006
Syracuse, New York

Frederick J. Scullin, Jr.
Senior United States District Court Judge